# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |
|---|---|
| ALIGN TECHNOLOGY, INC., | |
| Plaintiff, | |
| v. | Case No. 2:25-cv-00804 |
| ANGELALIGN TECHNOLOGY INC., WUXI EA MEDICAL INSTRUMENTS TECHNOLOGIES CO., LTD., WUXI EA BIO-TECH CO., LTD., AND SHANGHAI EA MEDICAL INSTRUMENTS CO., LTD. | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

1.     Plaintiff Align Technology, Inc. ("Align" or "Plaintiff") files this Complaint against Defendants Angelalign Technology Inc. ("Angelalign"), Wuxi EA Medical Instruments Technologies Co., Ltd. ("Wuxi EA"), Wuxi EA Bio-Tech Co., Ltd. ("Wuxi EA Bio-Tech"), and Shanghai EA Medical Instruments Co., Ltd. ("Shanghai EA") (collectively, "Angel" or "Defendants") for infringing five Align patents and alleges as follows:

## NATURE OF THE ACTION

2.     For almost 30 years, Align has pioneered innovative clear aligner systems for treating dental malocclusion (i.e., teeth and jaw misalignment) in patients as young as six years old, including by means of teeth straightening, jaw advancement, and bite correction.  Since its inception, Align has enabled dental professionals to deliver malocclusion care to over 20 million patients with Align's acclaimed Invisalign® system.  Through investments in research and development, Align has developed and patented specialized three-layer plastic material for its clear

aligners, as well as novel aligner features (such as ridges and bite ramps) to improve the effectiveness of the treatment.

3.     Founded in China in 2003, Angel also manufactures and sells clear aligners for treating malocclusion.  But unlike Align, Angel did not develop its technologies independently. In a deliberate effort to replicate Align's Invisalign® system, Angel has chosen to willfully infringe Align's patent.  Angel has done so by blatantly copying Align's technology, rather than innovating and developing its own.

4.     In 2023, Angel began to import and sell its infringing clear aligner products in the United States.[1]  Upon entering the U.S. market, Angel experienced growth in revenue. This commercial success, however, was not attributable to any innovation by Angel.  Rather, Angel was able to offer its clear aligner products at artificially low prices by unlawfully infringing Align's patented technology, thereby avoiding the significant research, development, and manufacturing costs that Align incurred to bring its products to market.  Subsequently, in 2025, Angel announced its plan to construct a manufacturing facility in the United States to increase production of its infringing clear aligners and continue to profit off the innovations of Align.[2]

5.     Align therefore brings this action under the patent laws of the United States, Title 35 of the United States Code, against Angel for its infringement of Align's United States Patent Nos. 11,154,384 (the "'384 Patent"), 11,648,091 (the "'091 Patent"), 8,899,977 (the "'977 Patent"), 10,980,616 (the "'616 Patent"), and 11,490,996 (the "'996 patent") (collectively, the "Asserted Patents").

---

[1] *Our history*, Angel Aligner, https://www.angelaligner.com/our-history/ (last visited Aug. 11, 2025).
[2] *Angel Aligner Announces Major Milestones in 2025, including U.S. Manufacturing Facility, Strategic Partnerships and KiD aligner system at AAO booth #733*, Angel Aligner (Apr. 22, 2025), https://www.angelaligner.com/en-us/news/angel-aligner-announces-major-milestones-in-2025-including-u-s-manufacturing-facility-strategic-partnerships-and-kid-aligner-system-at-aao-booth-733/.

## BACKGROUND

A.    **Align's Invisalign® System**

6.    Align was founded in 1997 to revolutionize the orthodontic market with the introduction of the Invisalign® system.  Created as a substitute for braces, Invisalign is a series of clear aligners that patients swap out periodically to gradually re-align their teeth.  Align's Invisalign® system allows doctors to treat the improper alignment of teeth and bites, or "malocclusion," using a series of custom-manufactured aligners.  The Invisalign® system corrects malocclusion with clear trays that go over the teeth and can be removed at will by the patient, allowing the patient to keep brushing, eating, and enjoying their lives as they normally would without the inconvenience and discomfort of traditional braces.  When inserted, the Invisalign® tray applies a gentle, constant force on precise parts of teeth that gradually and safely move the teeth into a desired position.

7.    To obtain Invisalign® treatment, a patient meets with a doctor for an initial consultation.  The doctor takes a scan or impression of a patient's teeth using an intraoral scanner, like Align's iTero® device, or with a material such as polyvinyl siloxane to obtain 3D profiles of the upper and lower tooth arch. The doctor then prescribes custom-manufactured Invisalign® aligners as appropriate.

8.    Creating the aligners involves several steps. First, Align uses the 3D profiles to create a digital treatment plan based on the doctor's prescription, which includes intermediate and final positions of the teeth, specific aligner features to apply a desired force on specific locations of a tooth for precise tooth movement, and other procedures to achieve the desired outcome. To do so, Align uses proprietary, state-of-the-art software based on its history of treating 20 million patients to identify and segment each patient's teeth.  Taking into account the doctor's instructions and preferences, Align's software proposes the desired final positions for the patient's teeth. The

following images depict digital representations of the teeth in their initial (left) and desired final (right) positions:

 

9.      Based on the initial and final positions, Align then creates an individualized treatment plan for that patient using its specialized software.  The software outputs intermediate steps, or "stages," reflecting planned, incremental movements by each tooth during treatment. Each stage may reflect movements (such as lateral movement, translation, tipping, rotation, etc.) down to less than 0.25 millimeter—smaller than the period at the end of this sentence.  For example, several stages of a treatment plan for the above teeth are shown below:



10.     After Align creates a treatment plan, Align provides that plan to the treating doctor for approval through its ClinCheck software.  The doctor can modify the plan as they see fit.  Once the doctor approves the treatment plan, Align manufactures the aligners.  An exemplary set of aligners (every fifth stage) is shown below:



11.     Since Align introduced its Invisalign® system in 1999, doctors have used it to treat more than 20 million patients suffering from malocclusion.

12.     Align's acclaimed Invisalign® system is the result of decades of research and development by Align.  Align has invested over $2 billion in developing its Invisalign® system, and its research and development expenses now exceed $360 million per year.[3]  Align also employs thousands of material scientists, biomechanical engineers, software engineers, doctors, and other research and development professionals in the United States and abroad.

**B.      Align's Proprietary Technology**

13.     The Invisalign® system is powered by three key elements.  First, SmartTrack™ material is Align's own patented three-layer plastic for aligners that provides gentle, constant force to ensure superior control of tooth movements.  Second, SmartStage™ technology involves programming each tooth movement in a certain sequence, at the right time to achieve optimal outcomes and greater predictability.  Third, SmartForce™ features are attachments and structures designed into the aligners to deliver the precise forces needed to achieve more predictable tooth movements.  The Invisalign® system was the first system in the world with features such as Align's patented Invisalign® Bite Ramps and Power Ridges to help address a wide range of clinical situations.

14.     The Invisalign® system is prescribed to patients through Invisalign-trained doctors.  Align provides clinical education programs and the tools needed for doctors to offer Invisalign treatment options in their practices.

15.     The Asserted Patents describe and claim inventions related to Align's groundbreaking Invisalign® system.  The '384 and '091 Patents relate to Align's proprietary multilayer material called SmartTrack™.

---

[3] Align Technology, Annual Report 2025, https://stocklight.com/stocks/us/nasdaq-algn/align-technology/annual-reports/nasdaq-algn-2025-10K-25682525.pdf (last visited Aug. 11, 2025).

16.    Effective treatment of malocclusions with clear aligners requires use of the right material.  The ideal material must be capable of applying a constant force to move the teeth, be durable enough for the patient's use for up to two weeks, and maintain its clear appearance.  After years of testing more than 260 different plastics, Align developed a new, three-layer material called "SmartTrack®."  This new material has two polyurethane outer layers that touch a patient's gums, teeth, and lips, and a co-polyester inner layer.  Aligners made from the SmartTrack™ material have superior elasticity, force retention, durability, comfort, and thermoformability, and they lead to better clinical outcomes than other materials.

17.    The '977, '616, and '996 Patents relate to Align's proprietary attachments and features called SmartForce™.

18.    The '977 Patent relates to Align's proprietary Power Ridge technology.

19.    Align's proprietary Power Ridges on clear aligners are designed to improve torque control, particularly for upper and lower anterior teeth.[4]  They are raised areas, or ridges, on the aligner that apply force to the tooth, helping to rotate it around its center of resistance.  Align's Power Ridges are used to provide additional force in cases where certain types of movements, including, but not limited to, lingual root torque, are prescribed.[5]

20.    The '616 and '996 Patents relate to Align's proprietary Bite Ramp technology.

21.    Although an overbite is a relatively common orthodontic condition, moderate to severe overbite—known as a deep bite—can lead to other medical issues, including persistent jaw pain and sleep disruption.  To treat deep bite, Align developed its proprietary Bite Ramp

---

[4] Meng et al., *Effects of different designs of orthodontic clear aligners on the maxillary central incisors in the tooth extraction cases: a biomechanical*, BMC Oral Health (June 22, 2023), https://bmcoralhealth.biomedcentral.com/articles/10.1186/s12903-023-03106-8.
[5] *Align Technology Introduces Innovative New Features for Invisalign(R) Products*, PR NEWSWIRE (Sept. 15, 2009), https://investor.aligntech.com/static-files/ff5cf739-2b7d-4130-aad2-ae5e516d68ea.

technology.  Invisalign® Bite Ramps are small, molded ramps built into clear aligners, primarily used to correct deep bite cases.  They create space between the upper and lower teeth, allowing the back teeth to move without interference and encouraging the front teeth to move into a more desirable position.  The Bite Ramps also help to reduce pressure on the jaw joints and promote proper jaw alignment.

22.    Invisalign® Bite Ramps are patient-customized prominences on the lingual surface of upper aligners.  For each patient, the bite ramp position is automatically adjusted throughout all treatment stages to maintain anterior contact.  An example of a set of Invisalign® Bite Ramps is illustrated below:[6]



## C.    Angel's Accused Products

23.    Angelalign was founded in Shanghai, China in 2003.  Angelalign is a manufacturer and seller of clear aligners.  Wuxi EA, founded in 2010, is involved in the product design, manufacturing, research and development, and importation of Angel's clear aligners.[7]  Wuxi EA

---

[6] *Invisalign G5 Innovations for Deep Bite*, INVISALIGN, at 5, https://www.aligntech.com/documents/
Invisalign_G5_Brochure.pdf (last visited July 28, 2025).
[7] Angelalign Technology, Inc. 2024 Annual Report,
https://www.hkexnews.hk/listedco/listconews/sehk/2025/0422/2025042201889.pdf (last visited Aug. 18, 2025).

Bio-Tech and Shanghai EA both conduct product design and research and development of clear aligner treatment solutions for Angel.[8]

24.     In 2023, Angel entered the U.S. market with its Angel Aligner System, which utilizes clear plastic aligners ("the Accused Products") to treat malocclusion.[9]   The Accused Products include, but are not limited to, Angel Aligner Pro, Angel Aligner Select, and Angel Aligner KiD.  The Angel Aligner System relies on orthodontic software for treatment planning and production of patient-specific clear aligner sets made of a three-layer plastic material.  These plans take into consideration attachments and include features to achieve improved force expression and controlled tooth movement.  The Accused Products infringe Align's Asserted Patents.

25.     In developing the Accused Products, Angel substantially copied proprietary materials and features of Align's Invisalign® aligners.   Angel directly targets current and prospective Align customers, advertising the Accused Products' similar features, including a multilayer plastic design, and custom attachments and structures to treat malocclusions.   On information and belief, Angel copied these features from Align's Invisalign® system, using Align's patented technology.

---

[8] Angelalign Technology, Inc. 2023 Annual Report,
https://www1.hkexnews.hk/listedco/listconews/sehk/2024/0422/2024042201613.pdf (last visited Aug. 14, 2025).
[9] *See About Us*, ANGEL ALIGNER, https://angelaligner.com.my/about-us/ (last visited July 30, 2025).

| Patented Invisalign® System | Angel Aligner System |
|---|---|
|  | |

26.    For example, following Align's development and release of a new, three-layer aligner material, Angel adapted its product to employ a three-layer design.[10]  On information and belief, Angel now manufactures its aligners using Bay Materials's Zendura FLX, a three-layer thermoplastic material with an elastomeric inner core and a hard outer shell, or an equivalent material.[11]  Angel aligners infringe multiple Align patents.

27.    Angel's copying of Align's design features is also apparent from its submission of two 510(k) Premarket notification applications to the FDA for its own aligner system, one of which was filed by Wuxi EA.[12]  A 510(k) Premarket notification seeks FDA clearance to market a medical device that is substantially equivalent to an already-cleared "predicate device."[13]  If the

---

[10] *See masterControl S*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/mastercontrol-s/ (last visited July 30, 2025).
[11] *See* Lawrence Kurzweil, *How Do Angel Aligners Operate?*, DDS DENTAL IMPLANTS, https://ddsdentalimplants.com/how-do-angel-aligners-operate.html (last visited July 30, 2025); *see also Zendura FLX Properties, A New Generation of Aligner Material,* ZENDURA DENTAL, https://www.zenduradental.com/pages/zendura-flx-properties?srsltid=AfmBOoo_g5Fz32AwNu-yympzgVrjo7Ag_WZreLXt3SH-2ExknE19D24P (last visited July 30, 2025).
[12] 510(k) Premarket Notification No. K171674, U.S. FOOD & DRUG ADMIN. (Dec. 6, 2017), https://www.accessdata.fda.gov/cdrh_docs/pdf17/K171674.pdf; 510(k) Premarket Notification No. K203688, U.S. Food & Drug Admin. (June 28, 2021), https://www.accessdata.fda.gov/cdrh_docs/pdf20/K203688.pdf.
[13] Premarket Notification 510(k), FDA (October 3, 2022), https://www.fda.gov/medical-devices/premarket-submissions-selecting-and-preparing-correct-submission/premarket-notification-510k.

FDA agrees that the proposed and predicate devices are "substantially equivalent," it approves the applicant's marketing of the proposed device under the 510(k) regulatory pathway.[14]   The abbreviated 510(k) pathway allows applicants to bypass the FDA's onerous pre-market approval process, which requires clinical trials.[15]

28.    Angel (through its subsidiaries Smile Development Corp. and Wuxi EA) submitted two 510(k) Premarket notifications seeking FDA clearance for the Angel Align System, including the clear aligners, relying on Align's Invisalign® system as a predicate device.[16]   Angel also submitted a separate 510(k) Premarket notification covering design updates to the Angel Align System.[17]   The design update involved aligners fabricated from a thermoformed multilayer composite of copolyester and polyurethane (TPU + PETG) plastic.[18]   Based on Angel's characterization of its aligners as "SAME" to Align's predicate, patent-protected Invisalign ("K143630"), the FDA cleared Angel's aligners for marketing and sale in the United States.[19]   Thus, Angel secured regulatory approval for its new, three-layer aligners under the FDA's abbreviated 510(k) pathway by arguing substantial equivalence to Align's Invisalign® system.[20]

29.    The Accused Products are three-layer aligners and infringe Align's '384 and '091 Patents.

---

[14] Id.
[15]  Id.
[16] 510(k) Premarket Notification No. K171674, U.S. FOOD & DRUG ADMIN. (Dec. 6, 2017), https://www.accessdata.fda.gov/cdrh_docs/pdf17/K171674.pdf; 510(k) Premarket Notification No. K203688, U.S. Food & Drug Admin. (June 28, 2021), https://www.accessdata.fda.gov/cdrh_docs/pdf20/K203688.pdf.
[17] 510(k) Premarket Notification No. K203688, U.S. Food & Drug Admin. (June 28, 2021), https://www.accessdata.fda.gov/cdrh_docs/pdf20/K203688.pdf.
[18] Id.
[19] 510(k) Premarket Notification No. K171674, U.S. FOOD & DRUG ADMIN. (Dec. 6, 2017), https://www.accessdata.fda.gov/cdrh_docs/pdf17/K171674.pdf; see also 510(k) Premarket Notification No. K143630, U.S. FOOD & DRUG ADMIN. (Oct. 20, 2015), https://www.accessdata.fda.gov/cdrh_docs/pdf14/K143630.pdf.
[20] 510(k) Premarket Notification No. K171674, U.S. FOOD & DRUG ADMIN. (Dec. 6, 2017), https://www.accessdata.fda.gov/cdrh_docs/pdf17/K171674.pdf.

30.     The Accused Products also copy certain Align SmartForce™ features.  The SmartForce™ features are bite ramps and ridges on the aligner designed to deliver the precise forces needed to achieve more predictable tooth movements.  The SmartForce™ features were launched in 2021.  Shortly thereafter, Angel adapted its product to employ identical features, including features Angel called its "angelAttach" features.

31.     Angel's "angelAttach" features infringe several Align patents.  For example, Angel aligners feature Torque Ridge, Intrusion Ridge, and Rotation Ridge attachments.  These aligner attachments copy Align's patented Power Ridges.  Align's Power Ridges consist of elongated pressure areas—or protrusions—on the aligner designed to deliver precise forces for more predictable tooth movement.  Align's Power Ridges apply strategically located pressure to the teeth, enabling doctors to control movement while reducing the number of visible attachments, particularly on the upper anterior teeth for conditions such as diastema, mesio-distal uprighting, and midline shift.[21]  Angel's website describes the design and functionality of its "angelAttach" features in nearly identical terms:  "There are two types of attachments, conventional attachments that are bonded to the teeth and *aligner pressure points* designed . . . to achieve better force expression and a more effective and precise control of tooth movement with clear aligners."[22]  As depicted below, Angel's website includes images of angelAttach features which infringe Align's Power Ridge technology:[23]

---

[21] *Align Technology Introduces New SmartForce™ Attachment-free Aligner Activation Feature*, BUSINESSWIRE, https://www.businesswire.com/news/home/20230906874135/en/Align-Technology-Introduces-New-SmartForce-Attachment-free-Aligner-Activation-Feature (last visited July 30, 2025).
[22] *angelAttach*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/angelattach/ (last visited July 30, 2025) (emphasis added).
[23] *Id*.

# Aligner Pressure Points

## Torque Ridge

**Function:** Assist in root control lingually and lingual bodily movement
**Tooth:** Incisor





## Intrusion Ridge

**Function:** Assist in intrusion
**Tooth:** Incisor

## Rotation Ridge Attachment

**Function:** Assist in derotation
**Tooth:** Incisor



32.    The Accused Products use Power Ridges and infringe Align's '977 Patent.

33.    Angel's "angelAttach" features also incorporate so-called "occlusal ramps," which are designed to assist in anterior tooth intrusion and bite opening.  These occlusal ramps—molded prominences located on the lingual surface of the upper aligners—appear to copy Align's patented Invisalign® Bite Ramps.  Angel's website includes depictions of these occlusal ramps that are, on information and belief, materially identical to those covered by Align's patented technology,

further evidencing Angel's deliberate and unauthorized use of Align's proprietary innovations. The following graphic from Angel's website illustrates the occlusal ramps:[24]



## Occlusal Ramps

**Function:** Assist in anterior tooth intrusion/bite opening
**Tooth:** Incisor and canine

34.    The Accused Products use Bite Ramps and infringe Align's '616 and '996 Patents.

35.    The Accused Products, which amount to nothing more than imitation products, are now offered for sale to customers in the United States.  On information and belief, patients receive the Angel aligners in the following way.  At step 1, the doctor uploads photos and scanner data through Angel's iOrtho platform.  At step 2, Angel generates a 3D model of the patient's teeth and designs a treatment plan using the 3D model.  At step 3, the treatment plan is transmitted to the doctor through the iOrtho platform for approval.  Since this treatment plan includes all stages of the treatment, models of all stages (i.e., intermediate and final stages) of the treatment are designed by Angel and transmitted to the doctor in the form of 3D models, viewable through the iOrtho

---

[24] *Id.*

platform.  The doctor may then request modification of the treatment.  If they do so, at step 4, Angel performs the modifications on the 3D models, with a revised treatment plan transmitted back to the doctor via the iOrtho platform.  Once the doctor approves the plans, at step 5, the aligners are fabricated by Angel and, at step 6, the aligners are shipped to the doctor.[25]

## PARTIES

36.    Align is a Delaware corporation with its principal place of business at 410 North Scottsdale Road, Suite 1300, Tempe, Arizona.

37.    Angelalign Technology Inc. is a corporation based in Shanghai, China with a registered office at Maples Corporate Services Limited, PO Box 309, Ugland House, Grand Cayman, KY1-1104, Cayman Islands.  Angelalign's principal place of business is located at 6/F-7/F, Building No. 7, KIC Business Center, No. 500, Zhengli Road, Yangpu District, Shanghai, China.

38.    Wuxi EA Medical Instruments Technologies Co., Ltd. is wholly owned subsidiary of Angelalign Technology Inc. and a Chinese limited liability company with its principal place of business in No.1619, Huishan Avenue, Huishan Economic Development Zone, Wuxi, Jiangsu, 214174, China.

39.    Wuxi EA Bio-Tech Co., Ltd. is a wholly owned subsidiary of Angelalign Technology Inc. and a Chinese corporation with its principal place of business in No. 36 Guanshan Road, Xinwu District Wuxi, Jiangsu, 214000, China.

---

[25] *See Treatment Workflow*, ANGEL ALIGNER, https://angelaligner.com.my/ (last visited July 29, 2025); *Product Brochure*, ANGEL ALIGNER, at 16, https://irp.cdn-website.com/3a6da4cf/files/uploaded/ Angel%20Aligner%20Product%20Brochure%202022%200930.pdf (last visited July 28, 2025).

40.     Shanghai EA Medical Instruments Co., Ltd. is a wholly owned subsidiary of Angelalign Technology Inc. and a Chinese corporation with its principal place of business in Room 601-603, No. 500 Zhengli Road Yangpu District Shanghai, 200433, China.

## JURISDICTION AND VENUE

41.     This Court has original subject matter jurisdiction over Align's patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the patent claims arise under the patent laws of the United States of America, Title 35 of the United States Code, 35 U.S.C. § 101 *et seq.*

42.     This Court has personal jurisdiction over Angel consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute at least because, among other reasons, Angel has committed acts within this District giving rise to this action.[26]  On information and belief, Angel has purposefully manufactured and/or distributed the Accused Products that infringe Align patents through established distribution channels with the expectation that those products would be sold in the United States, the State of Texas, and in this District.  Angel has committed and continues to commit acts of patent infringement in the United States, the State of Texas, and this District by, among other things, importing, offering to sell, and/or selling products that infringe the Asserted Patents.  On information and belief, a substantial part of the events giving rise to Align's claims, including acts of patent infringement, have occurred in the State of Texas and this Judicial District.  Accordingly, Angel has established minimum contacts within Texas and purposefully availed itself of the benefits of the State of Texas, and the exercise of personal jurisdiction over Angel would not offend traditional notions of fair play and substantial justice.

---

[26] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042.

43.     For example, Angel imports, sells, and offers to sell the Accused Products through websites including https://www.angelaligner.com/, which may be accessed throughout the United States, the State of Texas, and this District.[27]  On information and belief, Angel ships to patients sets of clear aligners produced based on patient information from oral examinations that doctors conduct and prescriptions that doctors fill out and upload to the iOrtho platform in Texas and in this District.[28]  Additionally, Angel hosts orthodontic educational events in Texas to advertise their infringing products and features for orthodontists.[29]

44.     Venue over Angel is proper in this District under 28 U.S.C. §§ 1391(c)(3) and 1400(b) because, on information and belief, Angel, Wuxi EA, Wuxi EA Bio-Tech, and Shanghai EA are foreign entities, as identified above in paragraphs 37, 38, 39 and 40.   28 U.S.C. § 1391(c); *In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the alien-venue rule).

## THE ASSERTED PATENTS

45.     The Asserted Patents are U.S. Patent Nos. 11,154,384 (the "'384 patent"), 11,648,091 (the "'091 patent"), 8,899,977 (the "'977 patent"), 10,980,616 (the "'616 patent"), and 11,490,996 (the "'996 patent").

46.     For each of the Asserted Patents, and to the extent necessary, Align complied with the provisions of 35 U.S.C. § 287 by, for example, selling its aligners with packaging that lists one

---

[27] *Where we are*, ANGEL ALIGNER, https://www.angelaligner.com/contact-us/ (last visited July 30, 2025).
[28] *See Treatment Workflow*, ANGEL ALIGNER, https://angelaligner.com.my/ (last visited July 29, 2025); *Product Brochure*, ANGEL ALIGNER, at 16, https://irp.cdn-website.com/3a6da4cf/files/uploaded/ Angel%20Aligner%20Product%20Brochure%202022%200930.pdf (last visited July 28, 2025).
[29] *Home*, Clinical Orthodontic Training & Resources (Sept. 11, 2025), https://education.angelaligner.com/; *Angel Ascend: Austin, Texas*, Education.Angelaligner.Com (June 6, 2025), https://education.angelaligner.com/event/angel-ascend-austin-texas/.

or more of the Asserted Patents and/or referring patients to its website, aligntech.com/patents, which correlates its patents to its products.

## A.    The Materials Patents

47.    The '384 patent, titled "Multilayer Dental Appliances and Related Methods and Systems," duly and legally issued on October 26, 2021, from U.S. Patent Application No. 17/214,487 and names Chunhua Li, Yan Chen, Heinz Pudleiner, Klaus Meyer, Joerg Nickel, and Craig Pehlert as inventors.  Align is the owner of all right, title, and interest in and to the '384 patent.  A true and correct copy of the '384 patent is attached hereto as Exhibit 1.

48.    The '091 patent, titled "Multilayer Polymer Sheets," duly and legally issued on May 16, 2023, from U.S. Patent Application No. 17/902,445 and names Chunhua Li, Yan Chen, Heinz Pudleiner, Klaus Meyer, Joerg Nickel, and Craig Pehlert as inventors.  Align is the owner of all right, title, and interest in and to the '091 patent.  A true and correct copy of the '091 patent is attached hereto as Exhibit 2.

## B.    The Power Ridge Patent

49.    The '977 patent, titled "Orthodontic Repositioning Appliances Having Improved Geometry, Methods and Systems," duly and legally issued on December 2, 2014, from U.S. Patent Application No. 12/324,714 and names Heng Cao, Vadim Matov, John Y. Morton, Jon Moss, and Ryan Kimura as inventors.  Align is the owner of all right, title, and interest in and to the '977 patent.  A true and correct copy of the '977 patent is attached hereto as Exhibit 3.

## C.    The Bite Ramp Patents

50.    The '616 patent, titled "Treatment Plan Specific Bite Adjustment Structures," duly and legally issued on April 20, 2021, from U.S. Patent Application No. 16/425,845 and names Rohit Tangula, John Morton, Chunhua Li, Bastien Pesenti, Jihua Cheng, and Jeeyoung Choi as

inventors.  Align is the owner of all right, title, and interest in and to the '616 patent.  A true and correct copy of the '616 patent is attached hereto as Exhibit 4.

51.    The '996 patent, titled "Treatment Plan Specific Bite Adjustment Structures," duly and legally issued on November 8, 2022, from U.S. Patent Application No. 17/494,627 and names Rohit Tangula, John Morton, Chunhua Li, Bastien Pesenti, Jihua Cheng, and Jeeyoung Choi as inventors.  Align is the owner of all right, title, and interest in and to the '996 patent.  A true and correct copy of the '996 patent is attached hereto as Exhibit 5.

<u>**COUNT I**</u>
**INFRINGEMENT OF U.S. PATENT NO. 11,154,384**

52.    Align realleges and incorporates by reference the allegations of all preceding paragraphs of this Complaint, as if fully set forth herein.

53.    On information and belief, Angel has been and is now directly infringing the '384 patent in this District and elsewhere, in violation of 35 U.S.C. §§ 271(a) and 271(g) at least by making aligners from masterControl and/or masterControl S plastic and by offering them for sale and selling them to doctors.  For example, on information and belief, Angel's manufacture, offering for sale, and sale of masterControl and/or masterControl S aligners infringes at least claim 1 of the '384 patent.

54.    On information and belief, Angel has been and continues to indirectly infringe the '384 patent in violation of 35 U.S.C. § 271(b), at least by inducing doctors and patients to sell, offer for sale, and use Angel's masterControl and/or masterControl S aligners that practice the '384 patent.  For example, on information and belief, Angel induces doctors to sell Angel's masterControl and/or masterControl S aligners to their patients by advertising those aligners to

doctors and patients.[30]  On information and belief, Angel also induces those doctors' patients to use Angel's masterControl and/or masterControl S aligners via direct advertising to patients of dental services.[31]

55.    Angel has known of the '384 patent, its infringement of the same, and of doctors' and patients' infringement of the same since at least service of this Complaint.

56.    On information and belief, Angel knew of the '384 patent, its infringement of the same, and of doctors' and patients' infringement of the same since before service of this Complaint.  For example, Angel submitted a 510(k) Premarket notification on December 11, 2017, that demonstrates Angel's awareness that the Invisalign® system uses "0.03 [inches] thick, Multilayer aromatic thermoplastic polyurethane / copolyester."[32]  Wuxi EA, on behalf of Angel, also submitted a 510(k) Premarket notification on June 28, 2021, that demonstrates Angel's awareness of the Invisalign® system.[33]  These facts give rise to a reasonable inference that Angel monitors Align's patent portfolio and evaluates whether its products and services practice Align's patents, including the '384 patent.

57.    On information and belief, Angel was at least willfully blind to the existence of the '384 patent and its own infringement, as well as that of doctors and patients.  For example, Angel submitted a 510(k) Premarket notification on December 11, 2017, that demonstrates Angel's awareness that the Invisalign® system uses "0.03 [inches] thick, Multilayer aromatic thermoplastic

---

[30] *Why Angel Aligner?*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/for-doctors/ (last visited July 30, 2025).
[31] *Id.*
[32] 510(k) Premarket Notification No. K171674, U.S. FOOD & DRUG ADMIN. (Dec. 6, 2017), https://www.accessdata.fda.gov/cdrh_docs/pdf17/K171674.pdf.
[33] 510(k) Premarket Notification No. K203688, U.S. Food & Drug Admin. (June 28, 2021), https://www.accessdata.fda.gov/cdrh_docs/pdf20/K203688.pdf.

polyurethane / copolyester."[34]  Wuxi EA, on behalf of Angel, also submitted a 510(k) Premarket notification on June 28, 2021, that demonstrates Angel's awareness of the Invisalign® system.[35] These facts give rise to a reasonable inference that Angel monitors Align's patent portfolio and evaluates whether its products and services practice Align's patents, including the '384 patent. Angel was aware of the high probability that their products and services infringed Align's patents. Under these circumstances, if they did not assess that infringement risk, that reflects a deliberate decision to avoid learning of and confirming their infringement.

58.    Thus, on information and belief, Angel knowingly induced infringement of at least claim 1 of the '384 patent and had the specific intent to cause such direct infringement.

59.    Angel's infringement of the '384 patent also was and continues to be deliberate and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

60.    Unless Angel is enjoined, Align will continue to suffer irreparable harm for which there is no adequate remedy at law. On information and belief, Angel's infringement of the '384 patent has caused and continues to cause irreparable harm to Align, including in this District, in the form of, among other things, loss of market share, lost business opportunities and sales, loss of goodwill associated with Align's innovative technologies, and loss of Align's exclusive right to license its invention.

---

[34] 510(k) Premarket Notification No. K171674, U.S. FOOD & DRUG ADMIN. (Dec. 6, 2017), https://www.accessdata.fda.gov/cdrh_docs/pdf17/K171674.pdf.
[35] 510(k) Premarket Notification No. K203688, U.S. Food & Drug Admin. (June 28, 2021), https://www.accessdata.fda.gov/cdrh_docs/pdf20/K203688.pdf.

61.    Align has sustained and will continue to sustain damages as a result of Angel's infringement of the '384 patent, and Align is entitled to recover damages sustained as a result of that infringement in an amount to be proven at trial.

**Infringement of Claim 1 of the '384 Patent by Accused Products**

62.    The Accused Products practice at least independent claim 1 of the '384 patent. Claim 1 of the '384 patent recites:

> 1. A dental appliance for positioning a patient's teeth from a first arrangement toward a second arrangement, the dental appliance comprising:
> > a plurality of tooth-receiving cavities shaped to receive and resiliently reposition the patient's teeth from the first arrangement toward the second arrangement;
> > three or more polymer layers, the three or more polymer layers comprising:
> > > a hard polymer layer comprising a co-polyester and having a flexural modulus greater than about 150,000 psi; and
> > > a soft polymer layer comprising a thermoplastic polyurethane elastomer and having an elongation at break of greater than about 200%, and a hardness from about 60 A to about 85 D.

63.    On information and belief, and if the preamble is found to be limiting, the Accused Products are dental appliances for positioning a patient's teeth from a first arrangement toward a second arrangement.[36]

64.    On information and belief, the Accused Products comprise a plurality of tooth-receiving cavities shaped to receive and resiliently reposition the patient's teeth from the first arrangement toward the second arrangement.  For example, Angel's "Angel Aligner Pro" product is "a series of custom-made removable clear orthodontic aligners that gently move the patient's teeth into the proper position over time."[37]  Angel's "Angel Aligner Select" product is "a series of

---

[36] *See, e.g.*, 510(k) Premarket Notification No. K171674, U.S. FOOD & DRUG ADMIN. (Dec. 6, 2017), https://www.accessdata.fda.gov/cdrh_docs/pdf17/K171674.pdf ("[The] Angel Align System is indicated for the alignment of teeth during orthodontic treatment of malocclusion").

[37] *Angel Aligner Pro,* ANGEL ALIGNER, https://angelaligner.com.my/angel-aligner-pro/ (last visited July 31, 2025).

custom-made removable clear orthodontic aligners that gently move the patient's teeth into the proper position over time."[38]  Angel's "Angel Aligner KiD" is intended to "[d]evelop the arch form, maintain space and align teeth."[39]

65.     On information and belief, the Accused Products comprise three or more polymer layers.  For example, the Accused Products are made of "masterControl S," a "Soft Multi-layered Polymer Material."[40]  Scientists at Exponent, Inc. tested samples of Angel aligners provided by Align.  Based on this testing, the Accused Products comprise three or more polymer layers.

Sample 1A Upper



Sample 1B Upper



- Cross-sectioning of Samples 1A and 1B indicated that the aligner body of both samples is comprised of a tri-layer material.
    - Due to the potential non uniformity of the cross-sectioned surface, the noted measurements should be considered approximate.

66.     Scientists at Exponent, Inc. performed Fourier transform infrared spectroscopy (FTIR) analysis on the Angel aligner samples provided by Align.  For each sample, the FTIR spectra of the exterior and interior layers were consistent with a polyester-based material, and the middle layer was consistent with a polyurethane-based material, as shown below:

---

[38] *Angel Aligner Select*, ANGEL ALIGNER, https://www.angelaligner.com/angel-aligner-select/ (last visited July 31, 2025).
[39] *What is Angel Aligner KiD?*, ANGEL ALIGNER, https://www.angelaligner.com/kid-campaign/ (last visited July 30, 2025).
[40] *masterControl S*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/mastercontrol-s/ (last visited July 30, 2025).

- The FTIR spectra of the Exterior and Interior layers of the Sample 1A upper aligner were consistent with a polyester-based material.
- The FTIR spectrum of the Middle layer of the Sample 1A upper aligner was consistent with a polyurethane-based material.
  - Library spectra for a representative polyester material and a representative polyurethane-based material are provided for reference.



- The FTIR spectra of the Exterior and Interior layers of the Sample 2A upper aligner were consistent with a polyester-based material.
- The FTIR spectrum of the Middle layer of the Sample 2A upper aligner was consistent with a polyurethane-based material.
  - Library spectra for a representative polyester-based material and a representative polyurethane-based material are provided for reference.



67.    The FTIR analysis is consistent with Zendura FLX, a material "engineered specifically for fabricating clear aligner appliances," or a similar material.[41]

---

[41] *Bay Materials Announces Zendura® FLX™ Thermoformable Material for Orthodontic Clear Aligner Therapy Appliances*, PR NEWSWIRE (Nov. 28, 2018), https://www.prnewswire.com/news-releases/bay-materials-announces-zendura-flx-thermoformable-material-for-orthodontic-clear-aligner-therapy-appliances-300756563.html.

68.    Zendura FLX is a product offered by Bay Materials.[42]  A Bay Materials employee submitted a declaration to the European Patent Office disclosing that Zendura FLX is a tri-layer material.[43]  Specifically, Zendura FLX's two outer layers are made of Eastman Tritan MP100 ("Tritan MP100") or an equivalent material.  Tritan MP100 is a polyester-based material.  Zendura FLX's inner layer is made of RxT50D or an equivalent material.[44]  RxT50D is a polyurethane-based material.

69.    On information and belief, Angel may use Zendura FLX, a tri-layer thermoplastic material that "combines an elastomeric inner core to provide flexibility and elasticity with a hard outer shell to increase elasticity and firmly grip the teeth,"[45] or a similar tri-layer material comprising at least one layer comprised of a polyester-based material like Tritan MP100 and at least one layer comprised of a polyurethane-based material like RxT50D.

70.    On information and belief, the Accused Products comprise a hard polymer layer comprising a co-polyester and having a flexural modulus greater than about 150,000 psi.  On information and belief, the outer layer of the Accused Products is a hard polymer layer made from Tritan MP100 or an equivalent material comprising a co-polyester and having a flexural modulus greater than about 150,000 psi.  Specifically, Tritan MP100, manufactured by Eastman Tritan, has a flexural modulus of 225,000 psi.[46]

---

[42] *Id.*
[43] European Patent Register, Citation in Opposition Procedure, EP 18733091 (Feb. 2, 2024), available at https://register.epo.org/application?documentId=LS4V6EBSCS25RV4&number=EP18733091&lng=en&npl=false.
[44] *Id.*, at 5.
[45] *See* Lawrence Kurzweil, *How Do Angel Aligners Operate?*, DDS DENTAL IMPLANTS (last visted July 30, 2025), https://ddsdentalimplants.com/how-do-angel-aligners-operate.html; see also *Zendura FLX Properties, A New Generation of Aligner Material*, ZENDURA DENTAL (last visited July 30, 2025), https://www.zenduradental.com/pages/zendura-flx-properties?srsltid=AfmBOoo_g5Fz32AwNu-yympzgVrjo7Ag_WZreLXt3SH-2ExknE19D24P.
[46] *Technical Data Sheet: Eastman Tritan™ Copolyester MP100*, EASTMAN, https://productcatalog.eastman.com/tds/ProdDatasheet.aspx?product=71070996 (last visited July 28, 2025).

| Comparison of physical properties[*] | | | | | |
|---|---|---|---|---|---|
| | Eastman Tritan™ copolyester MP100 | Eastar™ copolyester 6763 | Acrylonitrile (AN) | Acrylic multi-polymer | PVC |
| Heat resistance, glass transition (°C) | 110 | 82 | 84 | 100 | 85 |
| Toughness, instrumented impact | 20 (40 mil) | 11.5 (40 mil) | 10 (40 mil) | 4.0 (40 mil) | 11.4 |
| Energy @ max load, J: (thickness) | 12 (20 mil) | 6.0 (20 mil) | <4.0 (20 mil) | <2.0 (20 mil) | 5.7 |
| Toughness,notched Izod impact @ 23°C (ft·lbf/in.) | 18.4 | 1.9 | 5.0 | 1.6 | 7.9 |
| Toughness, elongation to break (%) | 210 | 130 | NA | 28 | 45 |
| Stiffness or flexibility, flexural modulus (kpsi) | 225 | 300 | 490 | 350 | 386 |
| Clarity, haze (%) | 1.4 | 1.8 | 2.7 | 11.7 | 3.6 |

*Results for injection molded plaques of ¹/₈-inch thickness, except where noted (instrumented impact)

71.     On information and belief, the Accused Products comprise a soft polymer layer comprising a thermoplastic polyurethane elastomer and having an elongation at break of greater than about 200%, and a hardness from about 60 A to about 85 D.  On information and belief, the inner layer of the Accused Products is a soft polymer layer made from RxT50DS or an equivalent material comprising a thermoplastic polyurethane elastomer and having an elongation at break of greater than about 200%, and a hardness from about 60 A to about 85 D.  Specifically, RxT50D, manufactured by Covestro, is a thermoplastic polyurethane elastomer with an elongation at break of around 480%.[47]  RxT50D has a hardness of 50 D, which is between 60 A and 85 D.[48]

---

[47] *MatWeb*, The Online Materials Information Resource,
https://www.matweb.com/search/datasheet.aspx?matguid=3c8d39ef613e4ace8173cef727e03f0a (last visited Aug. 11, 2025).
[48] *Id*.

## Covestro Texin® RxT50D Thermoplastic Polyurethanes (TPU)

. . .

| Mechanical Properties | Metric | English |
|---|---|---|
| Hardness, Shore D | 50 | 50 |
| Tensile Strength at Break | 49.0 MPa | 7110 psi |
| Tensile Stress at Strain | 14.5 MPa @Strain 100 % | 2100 psi @Strain 100 % |
| | 27.6 MPa @Strain 300 % | 4000 psi @Strain 300 % |
| Elongation at Break | 480 % | 480 % |

### COUNT II
### INFRINGEMENT OF U.S. PATENT NO. 11,648,091

72.     Align realleges and incorporates by reference the allegations of all preceding paragraphs of this Complaint, as if fully set forth herein.

73.     On information and belief, Angel has been and is now directly infringing the '091 patent in this District and elsewhere, in violation of 35 U.S.C. §§ 271(a) and 271(g) at least by making aligners from masterControl and/or masterControl S plastic and by offering them for sale and selling them to doctors and patients.  For example, on information and belief, Angel's manufacture, offering for sale, and sale of masterControl and/or masterControl S aligners infringes at least claim 1 of the '091 patent.

74.     On information and belief, Angel has and continues to indirectly infringe the '091 patent in violation of 35 U.S.C. § 271(b), at least by inducing doctors and patients to sell, offer for sale, and use Angel's masterControl and/or masterControl S aligners that practice the '091 patent. For example, on information and belief, Angel induces doctors to sell Angel's masterControl and/or masterControl S aligners to their patients by advertising those aligners to doctors.[49]  On

---

[49] *Why Angel Aligner?*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/for-doctors/ (last visited July 30, 2025).

information and belief, Angel also induces those doctors' patients to use Angel's masterControl and/or masterControl S aligners via direct advertising to patients of dental services.[50]

75.    Angel has known of the '091 patent, its infringement of the same, and of doctors' and patients' infringement of the same since at least service of this Complaint.

76.    On information and belief, Angel knew of the '091 patent, its infringement of the same, and of doctors' and patients' infringement of the same since before service of this Complaint.  On information and belief, Angel was familiar with Align's patent portfolio and knew it infringed the '091 patent for the same reasons as set forth in paragraph 56 of this Complaint.

77.    On information and belief, Angel was at least willfully blind to the existence of the '091 patent and its infringement of the '091 patent for the same reasons as set forth in paragraph 57 of this Complaint.

78.    Thus, on information and belief, Angel knowingly induced infringement of at least claim 1 of the '091 patent and had the specific intent to cause such direct infringement.

79.    Angel's infringement of the '091 patent also was and continues to be deliberate and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

80.    Unless Angel is enjoined, Align will continue to suffer irreparable harm for which there is no adequate remedy at law.  On information and belief, Angel's infringement of the '091 patent has caused and continues to cause irreparable harm to Align, including in this District, in the form of, among other things, loss of market share, lost business opportunities and sales, loss of goodwill associated with Align's innovative technologies, and loss of Align's exclusive right to license its invention.

---

[50] *Id.*

81.    Align has sustained and will continue to sustain damages as a result of Angel's infringement of the '091 patent, and Align is entitled to recover damages sustained as a result of that infringement in an amount to be proven at trial.

***Infringement of Claim 1 of the '091 Patent by Accused Products***

82.    The Accused Products practice at least independent claim 1 of the '091 patent. Claim 1 of the '091 patent recites:

> 1. A multilayer sheet comprising:
> a first layer containing a single polymer, wherein the single polymer of the first layer is a co-polyester, and wherein the first layer has a flexural modulus greater than 150,000 psi, an elongation at yield of greater than 4%, a tensile modulus greater than 150,000 psi, a tensile strength at yield of 4000-6500 psi, and an elongation at break of greater than 70%; and
> a second layer containing a single polymer, wherein the single polymer of the second layer is a thermoplastic polyurethane elastomer, and wherein the second layer has an ultimate tensile strength of greater than 5000 psi, an elongation at break of greater than 200%, and a hardness of 60A to 85D; and
> a third layer;
> wherein the first layer has an elastic modulus greater than the second layer; and
> wherein the multilayer sheet is incorporated into an orthodontic appliance.

83.    On information and belief, and if the preamble is found to be limiting, the Accused Products comprise a multilayer sheet.  On information and belief, Angel makes its aligners from a sheet comprising three or more polymer layers.  For example, the Accused Products are made of "masterControl S," a "Soft Multi-layered Polymer Material."[51]  Scientists at Exponent, Inc. tested samples of Angel aligners provided by Align.  Based on this testing, the Accused Products comprise three or more polymer layers, as shown below:

---

[51] *masterControl S*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/mastercontrol-s/ (last visited July 30, 2025).

Sample 1A Upper

Sample 1B Upper




- Cross-sectioning of Samples 1A and 1B indicated that the aligner body of both samples is comprised of a tri-layer material.
  - Due to the potential non uniformity of the cross-sectioned surface, the noted measurements should be considered approximate.

84.    Scientists at Exponent, Inc. performed FTIR analysis on the Angel aligner samples provided by Align.  For each sample, the FTIR spectra of the exterior and interior layers were consistent with a polyester-based material, and the middle layer was consistent with a polyurethane-based material, as depicted below:

- The FTIR spectra of the Exterior and Interior layers of the Sample 1A upper aligner were consistent with a polyester-based material.
- The FTIR spectrum of the Middle layer of the Sample 1A upper aligner was consistent with a polyurethane-based material.
  - Library spectra for a representative polyester material and a representative polyurethane-based material are provided for reference.



30

- The FTIR spectra of the Exterior and Interior layers of the Sample 2A upper aligner were consistent with a polyester-based material.
- The FTIR spectrum of the Middle layer of the Sample 2A upper aligner was consistent with a polyurethane-based material.
  - Library spectra for a representative polyester-based material and a representative polyurethane-based material are provided for reference.



85.    The FTIR analysis is consistent with Zendura FLX, a material "engineered specifically for fabricating clear aligner appliances," or a similar material.[52]

86.    On information and belief, Zendura FLX is Bay Materials's Zendura FLX product.[53]   A Bay Materials employee submitted a declaration to the European Patent Office disclosing that Zendura FLX is a tri-layer material.[54]  Specifically, Zendura FLX's two outer layers are made of Eastman Tritan MP100 ("Tritan MP100") or an equivalent material.  Tritan MP100 is a polyester-based material.  Zendura FLX's inner layer is made of RxT50D or an equivalent material.[55]  RxT50D is a polyurethane-based material.

87.    On information and belief, Angel may use Zendura FLX, a tri-layer thermoplastic material that that "combines an elastomeric inner core to provide flexibility and elasticity with a

---

[52] *Bay Materials Announces Zendura® FLX™ Thermoformable Material for Orthodontic Clear Aligner Therapy Appliances*, PR NEWSWIRE (Nov. 28, 2018), https://www.prnewswire.com/news-releases/bay-materials-announces-zendura-flx-thermoformable-material-for-orthodontic-clear-aligner-therapy-appliances-300756563.html.
[53] *Id*.
[54] European Patent Register, Citation in Opposition Procedure, EP 18733091 (Feb. 2, 2024), available at https://register.epo.org/application?documentId=LS4V6EBSCS25RV4&number=EP18733091&lng=en&npl=false.
[55] *Id.*, at 5.

hard outer shell to increase elasticity and firmly grip the teeth,"[56] or a similar tri-layer material comprising at least one layer comprised of a polyester-based material like Tritan MP100 and at least one layer comprised of a polyurethane-based material like RxT50D.

88.    On information and belief, the Accused Products comprise a first layer containing a single polymer, wherein the single polymer of the first layer is a co-polyester, and wherein the first layer has a flexural modulus greater than 150,000 psi, an elongation at yield of greater than 4%, a tensile modulus greater than 150,000 psi, a tensile strength at yield of 4000-6500 psi, and an elongation at break of greater than 70%.    On information and belief, the first layer of masterControl and/or masterControl S contains a single polymer, Tritan MP100 or an equivalent material, wherein the single polymer of the first layer is a co-polyester, and wherein the first layer has a flexural modulus greater than 150,000 psi, an elongation at yield of greater than 4%, a tensile modulus greater than 150,000 psi, a tensile strength at yield of 4,000–65,000 psi, and an elongation at break of greater than 70%.    Specifically, Tritan MP100, manufactured by Eastman Tritan, has a flexural modulus of 225,000 psi.[57]    Tritan MP100 has an elongation at yield of 7%, which is greater than 4%.[58]    Tritan MP100 has a tensile modulus of around 200,000 psi, which is greater than 150,000 psi.[59]    Tritan MP100 has a tensile strength at yield of around 5908 psi, which is greater than 5000 psi.[60]    Tritan MP100 has an elongation at break of 179%, which is greater than 70%.[61]

---

[56] *See* Lawrence Kurzweil, *How Do Angel Aligners Operate?*, DDS DENTAL IMPLANTS (last visted July 30, 2025), https://ddsdentalimplants.com/how-do-angel-aligners-operate.html; see also *Zendura FLX Properties, A New Generation of Aligner Material*, ZENDURA DENTAL (last visited July 30, 2025), https://www.zenduradental.com/pages/zendura-flx-properties?srsltid=AfmBOoo_g5Fz32AwNu-yympzgVrjo7Ag_WZreLXt3SH-2ExknE19D24P.

[57] *Technical Data Sheet: Eastman Tritan™ Copolyester MP100*, EASTMAN, https://productcatalog.eastman.com/tds/ProdDatasheet.aspx?product=71070996 (last visited July 28, 2025).

[58] *Id*.

[59] *Id*.

[60] *Id*.

[61] *Id*.

| Property[a] | Test Method[b] | Typical Value, Units[c] |
|---|---|---|
| **General** | | |
| Thickness of Film Tested | ASTM D 374 | .25 mm (.01 in.) |
| Density | ASTM D 1505 | 1.19 g/cm[3] |
| **Mechanical & Physical Properties** | | |
| Elmendorf Tear Resistance | | |
| M.D. | ASTM 1922 | 5 N (524 gf) |
| T.D. | ASTM 1922 | 6 N (575 gf) |
| PPT Tear Resistance | | |
| M.D. | ASTM 2582 | 42 N (10 lbf) |
| T.D. | ASTM 2582 | 56 N (13 lbf) |
| Tear Propagation Resistance, Split Tear Method | | |
| M.D. | ASTM 1938 | 13 N/mm (74.8 lbf/in.) |
| M.D. | ASTM 1938 | 4 N (.8 lbf) |
| T.D. | ASTM 1938 | 12 N/mm (65.6 lbf/in.) |
| T.D. | ASTM 1938 | 3 N (.7 lbf) |
| Tear Resistance, Trouser @ 200 mm/min | | |
| M.D. | ISO 6383-1 | 11 N/mm (63 lbf/in.) |
| T.D. | ISO 6383-1 | 11 N/mm (63 lbf/in.) |
| Tensile Strength @ Yield | | |
| M.D. | ASTM D 882 | 41 MPa (5908 psi) |
| T.D. | ASTM D 882 | 40 MPa (5782 psi) |
| Tensile Strength @ Break | | |
| M.D. | ASTM D 882 | 59 MPa (8548 psi) |
| T.D. | ASTM D 882 | 52 MPa (7581 psi) |
| Elongation @ Yield | | |
| M.D. | ASTM D 882 | 7 % |
| T.D. | ASTM D 882 | 7 % |
| Elongation @ Break | | |
| M.D. | ASTM D 882 | 179 % |
| T.D. | ASTM D 882 | 203 % |
| Tensile Modulus | | |
| M.D. | ASTM D 882 | 1462 MPa (2 x 10[5] psi) |
| T.D. | ASTM D 882 | 1383 MPa (2 x 10[5] psi) |

89.    On information and belief, the Accused Products comprise a second layer containing a single polymer, wherein the single polymer of the second layer is a thermoplastic polyurethane elastomer, and wherein the second layer has an ultimate tensile strength of greater than 5000 psi, an elongation at break of greater than 200%, and a hardness of 60A to 85D.  On information and belief, the second layer of masterControl and/or masterControl S contains a single polymer, RxT50D or an equivalent material, wherein the single polymer of the second layer is a thermoplastic polyurethane elastomer, and wherein the second layer has an ultimate tensile strength of greater than 5,000 psi, an elongation at break of greater than 200%, and a hardness of 60A to 85D.  Specifically, RxT50D, manufactured by Covestro, is a thermoplastic polyurethane elastomer with an elongation at break of around 480%.[62]  RxT50D has an ultimate tensile strength

---

[62] *MatWeb*, The Online Materials Information Resource,
https://www.matweb.com/search/datasheet.aspx?matguid=3c8d39ef613e4ace8173cef727e03f0a (last visited Aug. 11, 2025).

of 7,110 psi, which is greater than 5,000 psi.[63]  RxT50D has a hardness of 50D, which is between 60A and 85D.[64]

## Covestro Texin® RxT50D Thermoplastic Polyurethanes (TPU)

. . .

| Mechanical Properties | Metric | English |
|---|---|---|
| Hardness, Shore D | 50 | 50 |
| Tensile Strength at Break | 49.0 MPa | 7110 psi |
| Tensile Stress at Strain | 14.5 MPa @Strain 100 % | 2100 psi @Strain 100 % |
| | 27.6 MPa @Strain 300 % | 4000 psi @Strain 300 % |
| Elongation at Break | 480 % | 480 % |

90.    On information and belief, the Accused Products comprise a third layer.  On information and belief, masterControl S is made from a tri-layer material and, thus, comprises a third layer.[65]

91.    On information and belief, the Accused Products comprise a multilayer sheet wherein the first layer has an elastic modulus greater than the second layer.  On information and belief, the first layer of masterControl S has an elastic modulus greater than the second layer.  The first layer of Zendura FLX is comprised of Tritan MP100, which has an elastic modulus of 200,000 psi.[66]  The second layer of Zendura FLX is comprised of RxT50D, which has a tensile stress at 100% strain of approximately 2,100 psi, which is less than 200,000 psi.[67]  The elastic modulus is approximately equivalent to the tensile stress at 100% strain.

---

[63] *Id.*
[64] *Id.*
[65] European Patent Register, Citation in Opposition Procedure, EP 18733091 (Feb. 2, 2024), available at https://register.epo.org/application?documentId=LS4V6EBSCS25RV4&number=EP18733091&lng=en&npl=false.
[66] *Technical Data Sheet: Eastman Tritan™ Copolyester MP100*, EASTMAN, https://productcatalog.eastman.com/tds/ProdDatasheet.aspx?product=71070996 (last visited July 28, 2025).
[67] *MatWeb*, The Online Materials Information Resource, https://www.matweb.com/search/datasheet.aspx?matguid=3c8d39ef613e4ace8173cef727ce03f0a (last visited Aug. 11, 2025).

92.     On information and belief, the Accused Products comprise a multilayer sheet wherein the multilayer sheet is incorporated into an orthodontic appliance.  Angel incorporates masterControl and masterControl S into an orthodontic appliance.  For example, Angel's "Angel Aligner Pro" is a series of orthodontic appliances that comprise of masterControl and/or masterControl S.[68]  Angel's "Angel Aligner Select" is a series of orthodontic appliances that comprise of at least masterControl S.[69]  On information and belief, Angel's "Angel Aligner KiD" is a series of orthodontic appliances comprised of masterControl and/or masterControl S.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 8,899,977

93.     Align realleges and incorporates by reference the allegations of all preceding paragraphs of this Complaint, as if fully set forth herein.

94.     On information and belief, Angel has been and is now directly infringing the '977 patent in this District and elsewhere, in violation of 35 U.S.C. §§ 271(a) and 271(g) at least by making, selling, and/or offering for sale aligners having orthodontic tooth positioning appliances. For example, on information and belief, Angel's manufacture, offering for sale, and sale of the Accused Products infringes at least claim 1 of the '977 patent.

95.     On information and belief, Angel has been and is now indirectly infringing the '977 patent in violation of 35 U.S.C. § 271(b), at least by inducing doctors and patients to use, sell, and offer for sale the Accused Products.  For example, on information and belief, Angel induces doctors to sell its aligners to their patients by advertising those aligners to doctors.[70]  And, on

---

[68] *Angel Aligner Pro,* ANGEL ALIGNER, https://angelaligner.com.my/angel-aligner-pro/ (last visited July 31, 2025).
[69] *Angel Aligner Select*, ANGEL ALIGNER, https://www.angelaligner.com/angel-aligner-select/ (last visited July 31, 2025).
[70] *Why Angel Aligner?*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/for-doctors/ (last visited July 30, 2025).

information and belief, Angel also induces those doctors' patients to use its aligners via direct advertising to patients of dental services.[71]

96.     Angel has known of the '977 patent, its infringement of the same, and of doctors' and patients' infringement of the same since at least service of this Complaint.

97.     On information and belief, Angel knew of the '977 patent, its infringement of the same, and of doctors' and patients' infringement of the same since before service of this Complaint.  On information and belief, Angel was familiar with Align's patent portfolio and knew it infringed the '977 patent for the same reasons as set forth in paragraph 56 of this Complaint.

98.     On information and belief, Angel was at least willfully blind to the existence of the '977 patent and its infringement of the '977 patent for the same reasons as set forth in paragraph 57 of this Complaint.

99.     Thus, on information and belief, Angel knowingly induced infringement of at least claim 1 of the '977 patent and had the specific intent to cause such direct infringement.

100.     Angel's infringement of the '977 patent also was and continues to be deliberate and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

101.     Unless Angel is enjoined, Align will continue to suffer irreparable harm for which there is no adequate remedy at law.  On information and belief, Angel's infringement of the '977 patent has caused and continues to cause irreparable harm to Align, including in this District, in the form of, among other things, loss of market share, lost business opportunities and sales, loss of goodwill associated with Align's innovative technologies, and loss of Align's exclusive right to license its invention.

---

[71] *Id.*

36

102.    Align has sustained and will continue to sustain damages as a result of Angel's infringement of the '977 patent, and Align is entitled to recover damages sustained as a result of that infringement in an amount to be proven at trial.

**_Infringement of Claim 1 of the '977 Patent by Accused Products_**

103.    The Accused Products infringe at least independent claim 1 of the '977 patent. Claim 1 of the '977 patent recites:

> 1. An orthodontic appliance, comprising:
> a shell appliance having teeth receiving cavities shaped to apply a resiliently repositioning force when the appliance is worn by the patient so as to move the patient's teeth from a current arrangement toward a target arrangement, the shell comprising a ridge-shaped protrusion having a generally semi-circular cross-sectional shape protruding into a repositioning cavity and configured to apply a repositioning force to a patient's tooth corresponding to a selected tooth movement, the ridge-shaped protrusion having a length and a width that differ relative to each other, the length being greater than the width so that the repositioning force is applied along a length of the patient's tooth.

104.    On information and belief, and if the preamble is found to be limiting, the Accused Products comprise orthodontic appliances configured for repositioning a patient's teeth. According to Angel's own website:[72]

---

[72] _What is Angel Aligner Pro?_, ANGEL ALIGNER, https://www.angelaligner.com/angel-aligner-pro/ (last visited July 31, 2025).

Angel Aligner Pro is a series of custom-made removable clear orthodontic aligners that gently move the patient's teeth into the proper position over time. It uses innovative masterMulti technology and is a newly-developed more efficient clear aligner treatment option. The "7+3" dual aligner solution can decrease the length of your treatment and improve treatment efficiency. Angel Aligner Pro redefines invisible orthodontic treatment, creating beautiful smiles in a comfortable and efficient way.



105.    On information and belief, the Accused Products comprise a shell appliance having teeth receiving cavities shaped to apply a resiliently repositioning force when the appliance is worn by the patient so as to move the patient's teeth from a current arrangement toward a target arrangement.   As shown above, Angel describes its Angel Aligner Pro system as "a series of custom-made removable clear orthodontic aligners that gently move the patient's teeth into the proper position over time."[73]

106.    On information and belief, the Accused Products comprise the shell comprising a ridge-shaped protrusion having a generally semi-circular cross-sectional shape protruding into a repositioning cavity and configured to apply a repositioning force to a patient's tooth

---

[73] *Angel Aligner Pro*, ANGEL ALIGNER, https://angelaligner.com.my/angel-aligner-pro/ (last visited July 28, 2025).

corresponding to a selected tooth movement.   According to Angel's own website, Angel's orthodontic aligners include ridge-shaped protrusions "designed to achieve better force expression and a more effective and precise control of tooth movement":[74]

## Aligner Pressure Points



**Torque Ridge**

Function: Assist in root control lingually and lingual bodily movement;
Tooth: Incisor;



**Intrusion Ridge**

Function: Assist in intrusion;
Tooth: Incisor;

**Rotation Ridge Attachment**

Function: Assist in derotation;
Tooth: Incisor;



107.    On information and belief, the Accused Products comprise the ridge-shaped protrusion having a length and a width that differ relative to each other, the length being greater than the width so that the repositioning force is applied along a length of the patient's tooth.  For example, Angel's website includes a graphic illustrating this feature through its depiction of various ridge attachments:[75]

---

[74] *angelAttach*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/angelattach/ (last visited July 30, 2025).
[75] *Id*.

# Aligner Pressure Points

## Torque Ridge

**Function:** Assist in root control lingually and lingual bodily movement;
**Tooth:** Incisor;





## Intrusion Ridge

**Function:** Assist in intrusion;
**Tooth:** Incisor;

## Rotation Ridge Attachment

**Function:** Assist in derotation;
**Tooth:** Incisor;



<u>COUNT IV</u>
**INFRINGEMENT OF U.S. PATENT NO. 10,980,616**

108.    Align realleges and incorporates by reference the allegations of all preceding paragraphs of this Complaint, as if fully set forth herein.

109.    On information and belief, Angel has been and is now directly infringing the '616 patent in this District and elsewhere, in violation of 35 U.S.C. §§ 271(a) and 271(g) at least by making, selling, and/or offering for sale the Angel's aligner system which incorporates treatment plan specific bite adjustment structures.   For example, on information and belief, Angel's manufacture, offering for sale, and sale of Angel's aligner system infringes at least claim 1 of the '616 patent.

110.    On information and belief, Angel has been and is now indirectly infringing the '616 patent in violation of 35 U.S.C. § 271(b), at least by inducing doctors and patients to use, sell, and offer for sale Angel's aligner system.  For example, on information and belief, Angel induces doctors to sell its aligner system to their patients by advertising those aligners to doctors.[76]  And, on information and belief, Angel also induces those doctors' patients to use its aligner system via direct advertising to patients of dental services.[77]

111.    Angel has known of the '616 patent, its infringement of the same, and of doctors' and patients' infringement of the same since at least service of this Complaint.

112.    On information and belief, Angel knew of the '616 patent, its infringement of the same, and of doctors and patients' infringement of the same since before service of this Complaint. On information and belief, Angel was familiar with Align's patent portfolio and knew it infringed the '616 patent for the same reasons as set forth in paragraph 56 of this Complaint.

113.    On information and belief, Angel was at least willfully blind to the existence of the '616 patent and its infringement of the '616 patent for the same reasons as set forth in paragraph 57 of this Complaint.

114.    Thus, on information and belief, Angel knowingly induced infringement of at least claim 1 of the '616 patent and had the specific intent to cause such direct infringement.

115.    Angel's infringement of the '616 patent also was and continues to be deliberate and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

---

[76] *Why Angel Aligner?*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/for-doctors/ (last visited July 30, 2025).
[77] *Id*.

116.    Unless Angel is enjoined, Align will continue to suffer irreparable harm for which there is no adequate remedy at law.  On information and belief, Angel's infringement of the '616 patent has caused and continues to cause irreparable harm to Align, including in this District, in the form of, among other things, loss of market share, lost business opportunities and sales, loss of goodwill associated with Align's innovative technologies, and loss of Align's exclusive right to license its invention.

117.    Align has sustained and will continue to sustain damages as a result of Angel's infringement of the '616 patent, and Align is entitled to recover damages sustained as a result of that infringement in an amount to be proven at trial.

### *Infringement of Claim 1 of the '616 Patent by Accused Products*

118.    The Accused Products practice at least independent claim 1 of the '616 patent. Claim 1 of the '616 patent recites:

1. A system, comprising:
    a first appliance of a series of appliances to incrementally implement a treatment plan for a patient having a first jaw and a second jaw, comprising a first shell having a plurality of cavities therein to receive teeth of the first jaw and being for a first stage of the treatment plan;
    a first plurality of bite adjustment structures formed of a same material as the first shell and extending from the first shell each respective bite adjustment structure of the first plurality of bite adjustment structures having an edge where the each respective bite adjustment structure of the first plurality of bite adjustment structures meets the respective tooth receiving cavity, the edge of each respective first bite adjustment structure of the first plurality of bite adjustment structures being located at first distances from an incisal surface of the respective cavity, and a respective first planar surface thereby allowing a respective contacting tooth of a second jaw to slide along the respective planar surface;
    a second appliance of the series of appliances for a second stage of the treatment plan, comprising a second shell having a plurality of cavities therein to receive teeth of the first jaw; and
    a second plurality of bite adjustment structures formed of a same material as the second shell and extending from the second shell, each respective bite adjustment structure of the second plurality of bite adjustment structures having an edge where the each respective bite adjustment structure of the second plurality of bite adjustment structures meets the respective tooth receiving cavity, the edge of each respective second bite

adjustment structure of the first plurality of bite adjustment structures being located at second distances from an incisal surface of the respective cavity, and a respective second planar surface thereby allowing a respective contacting tooth of a second jaw to slide along the respective planar surface.

119.    On information and belief, and if the preamble is found to be limiting, the Accused Products are systems.  Angel's 510(k) submission describes Angel's series of aligners as a system.[78]

120.    On information and belief, the Accused Products comprise a first appliance of a series of appliances to incrementally implement a treatment plan for a patient having a first jaw and a second jaw, comprising a first shell having a plurality of cavities therein to receive teeth of the first jaw and being for a first stage of the treatment plan.  According to Angel's 510(k) submission, "[t]he Angel Align System consists of a *series of doctor-prescribed, thin, clear plastic removable orthodontic appliances (aligners)* and proprietary 3D software.  The aligners gently move the patient's teeth in small increments from *their original state to a more optimal, treated state*."[79]  Angel's own website includes the following graphics that describe Angel's aligner treatment plan as a "series":[80]

---

[78] 510(k) Premarket Notification No. K171674, U.S. FOOD & DRUG ADMIN. (Dec. 6, 2017), https://www.accessdata.fda.gov/cdrh_docs/pdf17/K171674.pdf ("The Angel Align System consists of a series of doctor-prescribed, thin, clear plastic removable orthodontic appliances (aligners) and proprietary 3D software").
[79] *Id*.
[80] *Angel Aligner Select*, ANGEL ALIGNER, https://www.angelaligner.com/angel-aligner-select/ (last visited July 31, 2025); *What is Angel Aligner Pro?*, ANGEL ALIGNER, https://www.angelaligner.com/angel-aligner-pro/ (last visited July 31, 2025).





121.    On information and belief, the Accused Products comprise a first plurality of bite adjustment structures formed of a same material as the first shell and extending from the first shell each respective bite adjustment structure of the first plurality of bite adjustment structures having an edge where the each respective bite adjustment structure of the first plurality of bite adjustment structures meets the respective tooth receiving cavity.[81]   On information and belief, Angel's aligners comprise a first plurality of bite turbos or occlusal ramps, which comprise a first plurality of bite adjustment structures formed of a same material as the first shell and extending from the first shell as shown below on Angel's website:[82]

---

[81] *angelAttach*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/angelattach/ (last visited July 30, 2025).
[82] *Id*.



## Occlusal Ramps

**Function:** Assist in anterior tooth intrusion/bite opening
**Tooth:** Incisor and canine

122.    On information and belief, the Accused Products comprise the edge of each respective first bite adjustment structure of the first plurality of bite adjustment structures being located at first distances from an incisal surface of the respective cavity, as shown below:[83]



---

[83] *See id.*

123.    On information and belief, the Accused Products comprise a respective first planar surface, thereby allowing a respective contacting tooth of a second jaw to slide along the respective planar surface as illustrated below.



**Occlusal Ramps**

**Function:** Assist in anterior tooth intrusion/bite opening
**Tooth:** Incisor and canine



124.    On information and belief, the Accused Products comprise a second appliance of the series of appliances for a second stage of the treatment plan, comprising a second shell having a plurality of cavities therein to receive teeth of the first jaw.   For example, Angel's website describes the Angel Aligner Pro system as advancing through a series of treatment stages to move the patient's teeth over time, each stage involving two distinct appliances—one for the first stage and one for the second—each incorporating different bite adjustment structures:[84]

---

[84] *Angel Aligner Pro*, ANGEL ALIGNER, https://angelaligner.com.my/angel-aligner-pro/ (last visited July 31, 2025).

46



- Angel Aligner Pro uses innovative masterMulti technology and is a new more efficient clear aligner treatment option that gently moves the patient's teeth into the proper position over time.

- Each stage has two sets of aligners. The first-set aligners made from masterControlS are worn for 7 days, and the other set for the next 3 days is produced from masterControl.

- The "7+3" mode shall be repeated in each stage until treatment is completed when teeth are aligned.

- The "7+3" dual aligner solution can decrease the length of your treatment and improve treatment efficiency, especially for complicated cases.

125.    On information and belief, the Accused Products comprise a second plurality of bite adjustment structures formed of a same material as the second shell and extending from the second shell.  As explained above, Angel's website describes the Angel Aligner Pro's "7+3 mode," in which multiple aligners are used to progressively move a patient's teeth in stages over time.[85] On information and belief, these bite adjustment structures are formed of a same material as the second shell.  These bite adjustment structures extend from the second shell:[86]

---

[85] *Id.*
[86] *See angelAttach*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/angelattach/ (last visited July 30, 2025).



## Occlusal Ramps

**Function:** Assist in anterior tooth intrusion/bite opening
**Tooth:** Incisor and canine

126.    On information and belief, the Accused Products comprise each respective bite adjustment structure of the second plurality of bite adjustment structures having an edge where the each respective bite adjustment structure of the second plurality of bite adjustment structures meets the respective tooth receiving cavity as highlighted in the graphic below:



127.    On information and belief, the Accused Products comprise the edge of each respective second bite adjustment structure of the first plurality of bite adjustment structures being located at second distances from an incisal surface of the respective cavity.  The graphics below illustrate an example of the first stage of a series of Angel aligners including a plurality of bite adjustment structures.  Angel's website explains that the Angel Aligner Pro system uses a series of aligners to progressively move a patient's teeth.  On information and belief, as the aligners progress from stage to stage to move a patient's teeth, the position of the bite adjustment structure likewise shifts over the course of treatment, moving from a first distance to a second distance relative to the incisal surface of the corresponding cavity:[87]



- Angel Aligner Pro uses innovative masterMulti technology and is a new more efficient clear aligner treatment option that gently moves the patient's teeth into the proper position over time.

- Each stage has two sets of aligners. The first-set aligners made from masterControlS are worn for 7 days, and the other set for the next 3 days is produced from masterControl.

- The "7+3" mode shall be repeated in each stage until treatment is completed when teeth are aligned.

- The "7+3" dual aligner solution can decrease the length of your treatment and improve treatment efficiency, especially for complicated cases.

**Stage 1:**

---

[87] *See Angel Aligner Pro*, ANGEL ALIGNER, https://angelaligner.com.my/angel-aligner-pro/ (last visited July 31, 2025); *see also angelAttach*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/angelattach/ (last visited July 30, 2025).



128.    On information and belief, the Accused Products comprise a respective second planar surface thereby allowing a respective contacting tooth of a second jaw to slide along the respective planar surface as pictured below:[88]

---

[88] *See angelAttach*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/angelattach/ (last visited July 30, 2025).



**Occlusal Ramps**

**Function:** Assist in anterior tooth intrusion/bite opening
**Tooth:** Incisor and canine



<u>**COUNT V**</u>
**INFRINGEMENT OF U.S. PATENT NO. 11,490,996**

129.    Align realleges and incorporates by reference the allegations of all preceding paragraphs of this Complaint, as if fully set forth herein.

130.    On information and belief, Angel has been and is now directly infringing the '996 patent in this District and elsewhere, in violation of 35 U.S.C. §§ 271(a) and 271(g) at least by making, selling, and/or offering for sale the Angel's aligner system which incorporates treatment plan specific bite adjustment structures.   For example, on information and belief, Angel's manufacture, offering for sale, and sale of Angel's aligner system infringes at least claim 1 of the '996 patent.

131.    On information and belief, Angel has been and is now indirectly infringing the '996 patent in violation of 35 U.S.C. § 271(b), at least by inducing doctors and patients to use, sell, and

offer for sale Angel's aligner system. For example, on information and belief, Angel induces doctors to sell its aligner system to their patients by advertising those aligners to doctors.[89] And, on information and belief, Angel also induces those doctors' patients to use its aligner system via direct advertising to patients of dental services.[90]

132.    Angel has known of the '996 patent, its infringement of the same, and of doctors' and patients' infringement of the same since at least service of this Complaint.

133.    On information and belief, Angel knew of the '996 patent, its infringement of the same, and of doctors' and patients' infringement of the same since before service of this Complaint. On information and belief, Angel was familiar with Align's patent portfolio and knew it infringed the '996 patent for the same reasons as set forth in paragraph 56 of this Complaint.

134.    On information and belief, Angel was at least willfully blind to the existence of the '996 patent and their infringement of the '996 patent for the same reasons as set forth in paragraph 57 of this Complaint.

135.    Thus, on information and belief, Angel knowingly induced infringement of at least claim 1 of the '996 patent and had the specific intent to cause such direct infringement.

136.    Angel's infringement of the '996 patent also was and continues to be deliberate and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

137.    Unless Angel is enjoined, Align will continue to suffer irreparable harm for which there is no adequate remedy at law. On information and belief, Angel's infringement of the '996 patent has caused and continues to cause irreparable harm to Align, including in this District, in

---

[89] *Why Angel Aligner?*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/for-doctors/ (last visited July 30, 2025).
[90] *Id.*

the form of, among other things, loss of market share, lost business opportunities and sales, loss of goodwill associated with Align's innovative technologies, and loss of Align's exclusive right to license its invention.

138.    Align has sustained and will continue to sustain damages as a result of Angel's infringement of the '996 patent, and Align is entitled to recover damages sustained as a result of that infringement in an amount to be proven at trial.

*Infringement of Claim 1 of the '996 Patent by Accused Products*

139.    The Accused Products practice at least independent claim 1 of the '996 patent. Claim 1 of the '996 patent recites:

1. A method, comprising:

generating a first digital model of a first physical model associated with a first appliance of a first stage of a treatment plan to incrementally reposition the teeth of a patient, the first appliance including a plurality of cavities therein to receive respective teeth of a first jaw and a plurality of first bite adjustment structures extending from a respective one of the cavities, a first bite adjustment structure of the plurality of first bite adjustment structures being customized for its respective tooth and having an edge where the first bite adjustment structure of the plurality of first bite adjustment structures meets the respective tooth receiving cavity, the edge of the first bite adjustment structure of the first plurality of bite adjustment structures located at a first distance from an incisal surface of the respective cavity, and having a respective first planar surface thereby allowing a respective contacting tooth of a second jaw to slide along the respective planar surface;

generating a second digital model of a second physical model associated with a second appliance of a second stage of treatment plan to incrementally reposition the teeth of a patient, the second appliance including a plurality of cavities therein to receive respective teeth of the first jaw and a plurality of second bite adjustment structures extending from a respective one of the cavities, a first bite adjustment structure of the plurality of second bite adjustment structures being customized for its respective tooth and having an edge where the first bite adjustment structure of the second plurality of bite adjustment structures meets the respective tooth receiving cavity, the edge of first bite adjustment structure of the second plurality of bite adjustment structures located at a second distance, different from the first distance, from an incisal surface of the respective cavity, and having a respective second planar surface thereby allowing a respective contacting tooth of a second jaw to slide along the respective planar surface; and

outputting the digital models of the first physical model and the second physical model for fabrication of the first appliance and the second appliance;

fabricating the first appliance based on the first digital model, the appliance

including the first bite adjustment structure of the plurality of first bite adjustment structures and having the respective first planar surface; and

fabricating the second appliance based on the second digital model, the appliance including the first bite adjustment structure of the plurality of second bite adjustment structures and having the respective second planar surface.

140.    On information and belief, and if the preamble is found to be limiting, Angel practices a method.

141.    On information and belief, Angel practices generating a first digital model of a first physical model associated with a first appliance of a first stage of a treatment plan to incrementally reposition the teeth of a patient.  According to Angel's 510(k) submission, "[t]he Angel Align System consists of a *series of doctor-prescribed, thin, clear plastic removable orthodontic appliances (aligners)* and proprietary 3D software. The aligners gently move the patient's teeth in small increments from *their original state to a more optimal, treated state*."[91]  To fabricate these aligners, Angel generates a first digital model of a first physical model.  For example, according to Angel's 510(k) submission, "[a] digital model of the patient's teeth is created."[92]

142.    On information and belief, the Accused Products comprise the first appliance including a plurality of cavities therein to receive respective teeth of a first jaw and a plurality of first bite adjustment structures extending from a respective one of the cavities.[93]

---

[91] 510(k) Premarket Notification No. K203688, U.S. Food & Drug Admin. (June 28, 2021), https://www.accessdata.fda.gov/cdrh_docs/pdf20/K203688.pdf.
[92] *Id.*
[93] *Angel Aligner Select*, ANGEL ALIGNER, https://www.angelaligner.com/angel-aligner-select/ (last visited July 28, 2025); *What is Angel Aligner Pro?*, ANGEL ALIGNER, https://www.angelaligner.com/angel-aligner-pro/ (last visited July 30, 2025).





143.    On information and belief, the Accused Products comprise a first bite adjustment structure of the plurality of first bite adjustment structures.[94]  A first bite adjustment structure of the plurality of first bite adjustment structures being customized for its respective tooth and having an edge where the first bite adjustment structure of the plurality of first bite adjustment structures meets the respective tooth receiving cavity as depicted in the following graphic from Angel's website:[95]

---

[94] *angelAttach*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/angelattach/ (last visited July 28, 2025).
[95] *Id*.



## Occlusal Ramps

**Function:** Assist in anterior tooth intrusion/bite opening
**Tooth:** Incisor and canine

144.    On information and belief, the Accused Products comprise the edge of the first bite adjustment structure of the first plurality of bite adjustment structures located at a first distance from an incisal surface of the respective cavity, as shown below:[96]



---

[96] *See id.*

145.    On information and belief, the Accused Products comprise a respective first planar surface thereby allowing a respective contacting tooth of a second jaw to slide along the respective planar surface, as illustrated below:[97]



## Occlusal Ramps

**Function:** Assist in anterior tooth intrusion/bite opening
**Tooth:** Incisor and canine

146.    On information and belief, Angel practices generating a second digital model of a second physical model associated with a second appliance of a second stage of a treatment plan to incrementally reposition the teeth of a patient.   Angel's own website includes the following graphics that describe Angel's aligner treatment plan as a "series":[98]

---

[97] *See id.*
[98] *Angel Aligner Select*, ANGEL ALIGNER, https://www.angelaligner.com/angel-aligner-select/ (last visited July 28, 2025); *What is Angel Aligner Pro?*, ANGEL ALIGNER, https://www.angelaligner.com/angel-aligner-pro/ (last visited July 30, 2025).



Angel Aligner Select is a series of custom-made removable clear orthodontic aligners that gently move the patient's teeth into the proper position over time.



Angel Aligner Pro is a series of custom-made removable clear orthodontic aligners that gently move the patient's teeth into the proper position over time. It uses innovative masterMulti technology and is a newly-developed more efficient clear aligner treatment option. The "7+3" dual aligner solution can decrease the length of your treatment and improve treatment efficiency. Angel Aligner Pro redefines invisible orthodontic treatment, creating beautiful smiles in a comfortable and efficient way.

147.    On information and belief, the Accused Products comprise the second appliance including a plurality of cavities therein to receive respective teeth of the first jaw and a plurality of second bite adjustment structures extending from a respective one of the cavities.  For example, Angel's website describes the Angel Aligner Pro system as advancing through a series of treatment stages to move the patient's teeth over time, each stage involving two distinct appliances—one for the first stage and one for the second—each incorporating different bite adjustment structures:[99]

---

[99] *Angel Aligner Pro*, ANGEL ALIGNER, https://angelaligner.com.my/angel-aligner-pro/ (last visited July 28, 2025).



- Angel Aligner Pro uses innovative masterMulti technology and is a new more efficient clear aligner treatment option that gently moves the patient's teeth into the proper position over time.

- Each stage has two sets of aligners. The first-set aligners made from masterControlS are worn for 7 days, and the other set for the next 3 days is produced from masterControl.

- The "7+3" mode shall be repeated in each stage until treatment is completed when teeth are aligned.

- The "7+3" dual aligner solution can decrease the length of your treatment and improve treatment efficiency, especially for complicated cases.

148.    On information and belief, the Accused Products comprise a first bite adjustment structure of the plurality of second bite adjustment structures being customized for its respective tooth and having an edge where the first bite adjustment structure of the second plurality of bite adjustment structures meets the respective tooth receiving cavity.  As explained above, Angel's website describes the Angel Aligner Pro's "7+3 mode," in which multiple aligners are used to progressively move a patient's teeth in stages over time.[100]

---

[100] *Id.*

149.    On information and belief, the Accused Products comprise the edge of the first bite adjustment structure of the second plurality of bite adjustment structures located at a second distance, different from the first distance, from an incisal surface of the respective cavity.  The graphics below illustrate an example of the first stage of a series of Angel aligners including a plurality of bite adjustment structures.  Angel's website explains that the Angel Aligner Pro system uses a series of aligners to progressively move a patient's teeth.  On information and belief, as the aligners progress from stage to stage to move a patient's teeth, the position of the bite adjustment structure likewise shifts over the course of treatment, moving from a first distance to a second distance relative to the incisal surface of the corresponding cavity:[101]

---

[101] *See id*; *see also angelAttach*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/angelattach/ (last visited July 28, 2025).



**angel**aligner Pro

- Angel Aligner Pro uses innovative masterMulti technology and is a new more efficient clear aligner treatment option that gently moves the patient's teeth into the proper position over time.

- Each stage has two sets of aligners. The first-set aligners made from masterControlS are worn for 7 days, and the other set for the next 3 days is produced from masterControl.

- The "7+3" mode shall be repeated in each stage until treatment is completed when teeth are aligned.

- The "7+3" dual aligner solution can decrease the length of your treatment and improve treatment efficiency, especially for complicated cases.

**Stage 1:**



150.    On information and belief, the Accused Products comprise a respective second planar surface thereby allowing a respective contacting tooth of a second jaw to slide along the respective planar surface as pictured below:[102]

---

[102] *See angelAttach*, ANGEL ALIGNER, https://www.angelaligner.com/en-us/angelattach/ (last visited July 28, 2025).



**Occlusal Ramps**

**Function:** Assist in anterior tooth intrusion/bite opening
**Tooth:** Incisor and canine

151.    On information and belief, Angel practices outputting the digital models of the first physical model and the second physical model for fabrication of the first appliance and the second appliance.  For example, according to Angel's 510(k) submission, after the software generates the digital mode, "[t]he resulting computer 'setups' relay this information to rapid prototyping machines that produce physical positive models."[103]

152.    On information and belief, Angel practices fabricating the first appliance based on the first digital model, the appliance including the first bite adjustment structure of the plurality of first bite adjustment structures and having the respective first planar surface.  For example, according to Angel's 510(k) submission, after producing physical positive models, "[t]he aligners are produced by thermoforming on each physical model to fabricate the sequence of aligners."[104]

153.    On information and belief, Angel practices fabricating the second appliance based on the second digital model, the appliance including the first bite adjustment structure of the plurality of second bite adjustment structures and having the respective second planar surface.  For

---

[103] 510(k) Premarket Notification No. K203688, U.S. Food & Drug Admin. (June 28, 2021), https://www.accessdata.fda.gov/cdrh_docs/pdf20/K203688.pdf.
[104] *Id.*

example, according to Angel's 510(k) submission, after producing physical positive models, "[t]he aligners are produced by thermoforming on each physical model to fabricate the sequence of aligners."[105]

## **PRAYER FOR RELIEF**

WHEREFORE, Align respectfully requests that this Court enter judgment in its favor and grant the following relief:

(a)     A judgment that Defendants have directly and/or indirectly infringed one or more claims of each of the Asserted Patents;

(b)     A judgment for a permanent injunction against Defendants and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other acting in active concert therewith from infringement of the Asserted Patents;

(c)     A judgment and order requiring Defendants to pay Plaintiff past and future damages under 35 U.S.C. § 284, including for supplemental damages arising from any continuing post-verdict infringement for the time between trial and entry of the final judgment with an accounting, as needed, as provided by 35 U.S.C. § 284;

(d)     A judgment and order requiring Defendants to pay Plaintiff reasonable ongoing royalties on a going-forward basis after final judgment;

(e)     A judgment and order requiring Defendants to pay Plaintiff pre-judgment and

---

[105] *Id.*

post-judgment interest on the damages award;

(f)    A judgment and order that Defendants' infringement of the Asserted Patents be found willful and that the Court award treble damages pursuant to 35 U.S.C. § 284;

(g)    A judgment that this case be found exceptional under 35 U.S.C. § 285, and an order awarding to Plaintiff its attorneys' fees incurred in prosecuting this action;

(h)    A judgment and order requiring Defendants to pay Plaintiff's costs and expenses incurred in prosecuting this action; and

(i)    Such other and further relief, including equitable relief, as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Align requests a trial by jury of any issues so triable by right.

Dated: August 18, 2025

Respectfully submitted,

*/s/ Brian C. Nash*
Brian C. Nash (TX Bar No. 24051103)
MORRISON & FOERSTER LLP
300 Colorado Street, Suite 1800
Austin, TX 78701
Tel: (512) 617-0650
Fax: (737) 910-0730
BNash@mofo.com

*Counsel for Plaintiff*
*ALIGN TECHNOLOGY, INC.*